UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACK LONDON,<br><br>Plaintiff,<br><br>v.<br><br>NEOS THERAPEUTICS, INC., ALAN HELLER, GERALD MCLAUGHLIN, JAMES ROBINSON, BRYANT FONG, BETH HECHT, GREG ROBITAILLE, JOHN SCHMID, and LINDA M. SZYPER,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction ("Proposed Transaction") announced on December 10, 2020, pursuant to which Neos Therapeutics, Inc. ("Neos" or the "Company") will merge with Aytu BioScience, Inc. ("Aytu").

2. On December 10, 2020, the Neos Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Neos stockholders will be entitled to receive 0.1088 shares of common stock of Aytu for each share of Neos common stock held, after taking into account the one-for-ten reverse split of Aytu's common stock that was effected on December 8, 2020. The transaction will result in Neos stockholders owning approximately 30% of the fully diluted common shares of Aytu. The all-

stock transaction is valued, on a fully diluted basis, at approximately $44.9 million based on the 10-day volume weighted average price of Aytu stock for the period ended December 9, 2020.

3. On January 27, 2021, in order to convince Neos' shareholders to vote in favor of the Proposed Transaction, Aytu filed a materially incomplete and misleading Registration Statement ("the Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of Neos' stockholders is expected to be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Neos stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

### THE PARTIES

9.  Plaintiff is, and has been continuously throughout all times relevant hereto, a Neos shareholder.

10. Defendant Neos is a Delaware corporation and a party to the Merger Agreement. Neos shares are traded on the NASDAQ under the ticker symbol "NEOS."

11. Defendant Gerald McLaughlin is the Company's President and Chief Executive Officer and a director of the Company.

12. Defendant Bryant Fong is a director of the Company.

13. Defendant Beth Hecht is a director of the Company.

14. Defendant Alan Heller is a director of the Company.

15. Defendant James Robinson is a director of the Company.

16. Defendant Greg Robitaille is a director of the Company.

17. Defendant John Schmid is a director of the Company.

18. Defendant Linda M. Szyper is a director of the Company.

**FACTS**

19. Neos is a fully integrated pharmaceutical company. Neos has developed a broad, proprietary modified-release drug delivery technology that enables the manufacture of single and multiple ingredient extended-release ("XR") pharmaceuticals in patient- and caregiver-friendly orally disintegrating tablet ("ODT") and oral suspension dosage forms. Neos has a pipeline of extended-release pharmaceuticals including three products approved by the FDA for the treatment of attention deficit hyperactivity disorder ("ADHD"). Adzenys XR-ODT was approved by the FDA in January 2016 and launched commercially in May 2016. Neos received approval from the FDA for Cotempla XR-ODT, its methylphenidate XR-ODT for the treatment of ADHD in patients 6 to 17 years old, in June 2017, and commercially launched in September 2017. Also, Neos received approval from the FDA for Adzenys ER oral suspension ("Adzenys ER") in September 2017 and commercially launched this product in February 2018. In addition, Neos manufactures and markets a generic Tussionex (hydrocodone and chlorpheniramine) ("generic Tussionex"), extended-release oral suspension for the treatment of cough and upper respiratory symptoms of a cold. In addition to its marketed products, Neos is developing NT0502, its product candidate for the treatment of sialorrhea.

20. Aytu is a commercial-stage specialty pharmaceutical company focused on commercializing novel products that address significant healthcare needs in both prescription and consumer health categories. Through Aytu's heritage prescription business, Aytu markets a portfolio of prescription products addressing large primary care and pediatric markets. The primary care portfolio includes (i) Natesto®, the only FDA-approved nasal formulation of testosterone for men with hypogonadism (low testosterone, or "Low T"), (ii) ZolpiMist™, the only FDA-approved oral spray prescription sleep aid, and (iii) Tuzistra® XR, the only FDA-

approved 12-hour codeine-based antitussive syrup. Aytu's prescription pediatric portfolio includes; (i) Cefaclor, a second-generation cephalosporin antibiotic suspension; (ii) Karbinal® ER, an extended release antihistamine suspension indicated to treat numerous allergic conditions; and (iii) Poly-Vi-Flor® and Tri-Vi-Flor®, two complementary prescription fluoride-based supplement product lines containing combinations of fluoride and vitamins in various formulations for infants and children with fluoride deficiency. Aytu leverages its internal commercial infrastructure and national sales force to sell its primary care and pediatric prescription portfolio.

21. On or about December 10, 2020, Neos' Board caused the Company to enter into the Merger Agreement.

22. The Merger Agreement provides that Neutron Acquisition Sub, Inc., a wholly-owned subsidiary of Aytu, will merge with and into Neos, with Neos surviving as a wholly-owned subsidiary of Aytu (the "Proposed Transaction").

23. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each share Neos stockholders will be entitled to receive 0.1088 shares of common stock of Aytu for each share of Neos common stock held, after taking into account the one-for-ten reverse split of Aytu's common stock that was effected on December 8, 2020. The transaction will result in Neos stockholders owning approximately 30% of the fully diluted common shares of Aytu. The all-stock transaction is valued, on a fully diluted basis, at approximately $44.9 million based on the 10-day volume weighted average price of Aytu stock for the period ended December 9, 2020.

24. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

25. It is therefore imperative that the Company shareholders receive the material

information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

26. Section 6.2 of the Merger Agreement has a "no solicitation" clause that prevents Neos from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> No Company Solicitation; Company Recommendation of the Merger.
>
> (a) The Company shall not, and shall cause its Subsidiaries and the Company's and its Subsidiaries' respective directors and officers not to, and shall not permit or authorize any of its or its Subsidiaries' other Representatives to, directly or indirectly, (i) solicit, initiate, endorse, encourage or knowingly facilitate any inquiry, proposal or offer with respect to, or the making or completion of, any Company Acquisition Proposal, or any inquiry, proposal or offer that is reasonably likely to lead to any Company Acquisition Proposal, (ii) enter into, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any Third Person any information or data with respect to, or otherwise cooperate in any way with, any Company Acquisition Proposal or (iii) agree in writing or publicly propose to do any of the foregoing. The Company shall, and shall cause each of its Subsidiaries and the respective Representatives of the Company and its Subsidiaries to, (A) immediately cease and cause to be terminated all existing discussions and negotiations with any Third Person conducted heretofore with respect to any Company Acquisition Proposal or potential Company Acquisition Proposal and immediately terminate all physical and electronic data room access previously granted to any such Third Person, (B) request the prompt return or destruction of all confidential information previously furnished with respect to any Company Acquisition Proposal or potential Company Acquisition Proposal and (C) not terminate, waive, amend, release or modify any provision of any confidentiality or standstill agreement to which it or any of its Affiliates or Representatives is a party with respect to any Company Acquisition Proposal or potential Company Acquisition Proposal, and shall enforce the provisions of any such agreement (provided, that the Company shall be permitted to grant waivers of, and not enforce, any standstill agreement, but solely to the extent that the Company Board has determined in good faith, after consultation with its outside counsel, that failure to take such action (I) would prohibit the counterparty from making an unsolicited Company Acquisition Proposal to the Company Board in compliance with this Section 6.2 and (II) would be inconsistent with its fiduciary duties to the stockholders of the Company under applicable Law). Notwithstanding the foregoing, if at any time following the date of this Agreement and prior to obtaining the Company Stockholder Approval, (1) the Company receives a written Company Acquisition Proposal that the Company Board believes in good faith to be bona fide, (2) such Company Acquisition Proposal was unsolicited and did not otherwise

result from a breach of this Section 6.2, (3) the Company Board determines in good faith (after consultation with outside counsel and its financial advisor) that such Company Acquisition Proposal constitutes or would reasonably be expected to lead to a Company Superior Proposal, and (4) the Company Board determines in good faith (after consultation with outside counsel) that the failure to take the actions referred to in clause (x) or (y) below would be inconsistent with its fiduciary duties to the stockholders of the Company under applicable Law, then the Company and its Representatives may (x) furnish information with respect to the Company and its Subsidiaries to the Third Person making such Company Acquisition Proposal pursuant to an Acceptable Confidentiality Agreement; provided, that (I) the Company shall provide Parent a non-redacted copy of each confidentiality agreement the Company has executed in accordance with this Section 6.2(a) and (II) the Company shall furnish or make available to Parent prior to, or substantially concurrently with, the time it is furnished or made available to such Third Person any non-public information that was not previously provided to Parent or its Representatives, and (y) participate in discussions or negotiations with the Person making such Company Acquisition Proposal regarding such Company Acquisition Proposal. The Company shall notify Parent in writing of any decision of the Company Board to enter into discussions or negotiations concerning any Company Acquisition Proposal or to provide non-public information with respect to the Company and its Subsidiaries to any Person making a Company Acquisition Proposal, which notice shall be given as promptly as reasonably practicable after such determination was reached (and in any event no later than twenty-four (24) hours after such determination was reached). For the avoidance of doubt, it shall not be a violation of this Section 6.2 if the Company and its Representatives contact a Third Person making any Company Acquisition Proposal solely to clarify the terms and conditions of such Company Acquisition Proposal and to determine whether it constitutes or would reasonably be expected to lead to a Company Superior Proposal.

27. In addition, Section 8.3 of the Merger Agreement requires Neos to pay up to a $2,00,000.00 "termination fee" in the event this agreement is terminated under certain conditions by Neos and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Neos's ability to consider other offers.

28. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

29. As set forth below, the Registration Statement omits material information.

30. First, the Registration Statement omits material information regarding Neos',

Aytu's, and the pro forma company's financial projections.

31. With respect to Neos' financial projections, the Registration Statement fails to disclose all line items used to calculate Gross Profit, EBIT, and Unlevered Free Cash Flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

32. With respect to Aytu's financial projections, the Registration Statement fails to disclose all line items used to calculate Gross Profit, EBIT, and Unlevered Free Cash Flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

33. With respect to the pro forma company's financial projections, the Registration Statement fails to disclose all line items used to calculate Gross Profit, OpEx Synergies, EBIT, and Unlevered Free Cash Flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

34. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

35. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor MTS Securities, LLC ("MTS") in connection with the Proposed Transaction.

36. With respect to MTS' *Discounted Cash Flow Analysis – Neos*, the Registration Statement fails to disclose: (i) the terminal values of Neos; (ii) the inputs and assumptions underlying the use of the terminal exit revenue multiples ranging from 1.0x to 2.0x and ranges of weighted average cost of capital of 15% to 19%; and (iii) Neos current capitalization, as provided

by Neos Therapeutics' management. This information must be disclosed to make the Registration Statement not materially misleading to Neos stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to MTS' *Discounted Cash Flow Analysis – Aytu*, the Registration Statement fails to disclose: (i) the terminal values of Aytu; (ii) the inputs and assumptions underlying the use of the terminal exit revenue multiples ranging from 2.0x to 2.7x and ranges of weighted average cost of capital of 9% to 13%; and (iii) Aytu's current capitalization, as provided by Aytu's management. This information must be disclosed to make the Registration Statement not materially misleading to Neos stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to MTS' *Pro Forma Combination Analysis*, the Registration Statement fails to disclose the inputs and assumptions underlying the use of the terminal exit revenue multiples ranging from 1.4x to 2.3x and ranges of weighted average cost of capital of 9.0% to 13.0%. This information must be disclosed to make the Registration Statement not materially misleading to Neos stockholders and provide stockholders with full and relevant information in considering how to vote.

39. Third, the Registration fails to the details and extent of the discussion Neos had with its principal term loan lender, Deerfield, and other potentially interested lenders in connection with the refinancing of Neos' debt and other financing alternatives and why no financing proposals were received that the Neos Board believed were economically acceptable or would be in the best interest of Neos stockholders.

40. The omission of the above-referenced material information renders the Registration false and misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

46. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

47. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the

content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9,

by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 1, 2021

                              **MOORE KUEHN, PLLC**

                              */s/Justin Kuehn*
                              Justin A. Kuehn
                              Fletcher W. Moore

30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*

14